1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOHN LAPONTE,

11            Petitioner,                    No. CIV S-09-0570 MCE DAD

12        vs.

13   JOHN HAVILAND, Warden,

14            Respondent.              FINDINGS & RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the decision of the California Board

18   of Parole Hearings (hereinafter "Board") to deny him parole for two years at his parole

19   consideration hearing held on December 4, 2007.  Upon careful consideration of the record and

20   the applicable law, the undersigned will recommend that petitioner's application for habeas

21   corpus relief be denied.

22                      PROCEDURAL BACKGROUND

23            On March 21, 1990, in the Los Angeles County Superior Court, petitioner entered

24   a plea of guilty to kidnapping for ransom, false imprisonment by violence, assault with a firearm,

25   /////

26   /////

                                    1

1    and second degree robbery.  (Pet. (Doc. No. 1) at 44-45.)[1]  Petitioner also admitted to sentencing

2    enhancement allegations that he used a firearm in the commission of the kidnapping, false

3    imprisonment, assault and robbery.  (Id.)  On that same date petitioner was sentenced to life in

4    prison with the possibility of parole, plus a two-year term, the execution of which was stayed,

5    and five-year and two-year terms of imprisonment to be served concurrently.  (Id. at 46.)

6            On December 4, 2007, following a hearing, the Board found that petitioner was

7    unsuitable for release on parole, and denied parole for two years.  (Pet., Part 1 (Doc. No. 1-1) at

8    69-78.)  Petitioner challenged the Board's decision in a petition for writ of habeas corpus filed in

9    the Los Angeles County Superior Court.  (Answer, Ex. 1, Part 1, at 2.)  That petition was denied

10   in a reasoned opinion on July 22, 2008.  (Answer, Ex. 2.)  Petitioner subsequently filed habeas

11   petitions in the California Court of Appeal for the Second Appellate District and the California

12   Supreme Court, both of which were summarily denied on October 23, 2008 and December 23,

13   2008, respectively.  (Answer, Ex. 4, Ex. 6.)

14                           FACTUAL BACKGROUND

15           At petitioner's December 4, 2007 parole suitability hearing the Board described

16   the facts of his commitment offense follows:

17           The offense summary states that on November 19th of 1989,
             Laponte kidnapped Zoraida, Z-O-R-A-I-D-A, Noriega, N-O-R-I-E-
18           G-A, at gunpoint in La Puente, California.  Laponte took Noriega
             to the Valley Inn Motel located at 13010 Valley Boulevard, La
19           Puente, California.

20           Laponte's crime partners, Raul Serrano, S-E-R-R-A-N-O, and
             Gabriel Ayala, A-Y-A-L-A, arrived at the motel room later.
21           Laponte, Serrano, and Ayala were in possession of a firearm, at one
             point or another, in the room according to the victim.
22
             Serrano made a call to the victim's family demanding a $15,000
23           ransom payment.  The victim's family informed the Industry
             Sheriff's Station.  Deputies had the phone tapped for incoming
24

25   _____

26       [1] Page number citations such as this one are to the page number reflected on the court's
     CM/ECF system and not to page numbers assigned by the parties.

calls.  Another phone call was received from the defendants and the call was traced to the Valley Inn Motel.

The deputies arrived at the location, observed Laponte leave the motel room, driving off.  Laponte was later arrested and detained by deputies.

Serrano and Ayala later left the motel room, using the victim as a hostage for their escape.  Deputies pursued the vehicle, eventually stopping the vehicle and arresting Serrano and Ayala, and the victim was rescued.

(Pet., Part 1 (Doc. No. 1-1) at 58-59.)

ANALYSIS

I.  Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

1        (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the

2    State court proceeding.

3   See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362

4   (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).  If the state court's decision

5   does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review

6   of a habeas petitioner's claims.  Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  See

7   also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that

8   we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such

9   error, we must decide the habeas petition by considering de novo the constitutional issues

10   raised.").

11        The court looks to the last reasoned state court decision as the basis for the state

12   court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  If the last reasoned

13   state court decision adopts or substantially incorporates the reasoning from a previous state court

14   decision, this court may consider both decisions to ascertain the reasoning of the last decision.

15   Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc).

16   II.  Petitioner's Claims

17      A.  Due Process

18        Petitioner asserts that the Board violated his right to due process by finding in

19   2007 that he was unsuitable for release on parole.  (Pet. (Doc. No. 1) at 5.)

20      1.  State Court Opinion

21        The Los Angeles County Superior Court specifically rejected petitioner's due

22   process claim, reasoning as follows:

23        The Court finds that there is some evidence to support the Board's
findings that the offense was carried out in a dispassionate and

24    calculated manner and that the motive was very trivial in relation
to the offense.  Cal. Code Regs., tit. 15, § 2402, subs. (c)(1)(B) and

25    (c)(1)(E).  The Petitioner and his accomplices planned to kidnapp
Ms. Noriega in order to extort a ransom from her family.  This was

26    dispassionate and calculated.  Further, as the Petitioner did not

speak at the hearing, the only apparent motive was to steal money from Ms. Noriega's family.  There is no evidence in the record that suggests that the Petitioner or his accomplices knew Ms. Noriega or her family nor that any of them had harmed the Petitioner in any way.  Thus, the apparent motive was very trivial in relation to the offense.

The Court also finds that there is some evidence to support the Board's finding that the Petitioner's institutional behavior weighs heavily against his suitability.  Cal. Code Regs., tit. 15, § 2402, subd. (c)(6).  The petitioner has received 22 serious 115 disciplines in prison, including five since his last hearing in 2005.  His continued inability to conform to the rules and his recent problems with authority constitute some evidence that he continues to pose an unreasonable risk of danger to society if released.

The Board also considered the Petitioner's limited programming and lack of self-help participation in prison, his failure to provide any parole plans, as well as his obstinate and hostile behavior at the hearing.  The Board also considered the Petitioner's psychological report, which indicated that his risk of future violence was low, but that he had problems with authority and a Global Assessment of Functioning Score of 60 out of 100 and that further observation and evaluation would be necessary.  While these factors, alone, may not justify a finding of unsuitability, the Board may properly consider them as relevant to a determination of whether the Petitioner is suitable for parole.  Cal. Code Regs., tit. 15, § 2402(b).

The Board also considered the Petitioner's post-conviction gains, however, they still concluded that the Petitioner would pose an unreasonable threat to public safety.  Penal Code § 3041(b).  The Court finds that there is some evidence to support this determination because of the dispassionate and calculated nature of the Petitioner's commitment offense, as well as his poor recent behavior in prison.  The petitioner's continued refusal to follow rules and problems with authority figures are some evidence that he continues to be a risk of danger to society if released.

(Answer, Ex. 2 at 2-3.)

## 2.  Applicable Legal Standards

### a.  Due Process in the California Parole Context

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law.  A litigant alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest

protected by the Due Process Clause and then show that the procedures attendant upon the

deprivation were not constitutionally sufficient.  <u>Kentucky Dep't of Corrections v. Thompson</u>,

490 U.S. 454, 459-60 (1989); <u>McQuillion v. Duncan</u>, 306 F.3d 895, 900 (9th Cir. 2002).[2]

A protected liberty interest may arise from either the Due Process Clause of the

United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

expectation or interest created by state laws or policies."  <u>Wilkinson v. Austin</u>,  545 U.S. 209,

221 (2005) (citations omitted).  <u>See also</u> <u>Board of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987).

The United States Constitution does not, of its own force, create a protected liberty interest in a

parole date, even one that has been set.  <u>Jago v. Van Curen</u>, 454 U.S. 14, 17-21 (1981);

<u>Greenholtz v. Inmates of Neb. Penal</u>, 442 U.S. 1, 7 (1979) (There is "no constitutional or

inherent right of a convicted person to be conditionally released before the expiration of a valid

sentence."); <u>see also</u> <u>Hayward v. Marshall</u>, 603 F.3d 546, 561 (9th Cir. 2010) ("[I]n the absence

of state law establishing otherwise, there is no federal constitutional requirement that parole be

granted in the absence of 'some evidence' of future dangerousness or anything else.") (en banc).

However, "a state's statutory scheme, if it uses mandatory language, 'creates a presumption that

parole release will be granted' when or unless certain designated findings are made, and thereby

gives rise to a constitutional liberty interest."  <u>McQuillion</u>, 306 F.3d at 901 (quoting <u>Greenholtz</u>,

442 U.S. at 12).  <u>See also</u> <u>Allen</u>, 482 U.S. at 376-78; <u>Pearson v. Muntz</u>, 606 F.3d 606, 609 (9th

Cir. 2010) ("The principle that state law gives rise to liberty interests that may be enforced as a

matter of federal law is long established."); <u>Hayward</u>, 603 F.3d 562-63 ("Although the Due

---

[2]  In the context of parole proceedings, the "full panoply of rights" afforded to criminal defendants is not "constitutionally mandated" under the federal Due Process Clause.  <u>Jancsek v. Oregon Bd. of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987) (internal quotations and citation omitted).  The United States Supreme Court has held that due process is satisfied in the context of a hearing to set a parole date where a prisoner is afforded notice of the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the denial.  <u>Hayward v. Marshall</u>, 603 F.3d 546, 560 (9th Cir. 2010) (en banc) (quoting <u>Greenholtz</u>, 442 U.S. at 16).  <u>See also</u> <u>Morrissey v. Brewer</u>, 408 U.S. 471, 481 (1972) (describing the procedural process due in cases involving parole issues).

1   Process Clause does not, by itself, entitle a prisoner to parole in the absence of some evidence of

2   future dangerousness, state law may supply a predicate for that conclusion.")

3          In California, a prisoner is entitled to release on parole unless there is "some

4   evidence" of his or her current dangerousness.  Hayward, 603 F.3d at 562 (citing In re Lawrence,

5   44 Cal.4th 1181, 1205-06, 1210 (2008) and In re Shaputis, 44 Cal. 4th 1241 (2008)); Cooke v.

6   Solis, 606 F.3d 1206, 1213 (9th Cir. 2010), pet. for cert. filed (Sept. 2, 2010) (No. 10-333); Pirtle

7   v. California Bd. of Prison Terms, 611 F.3d 1015, 1020 (9th Cir. 2010); In re Rosenkrantz, 29

8   Cal.4th 616, 651-53 (2002).  Therefore, "California's parole scheme gives rise to a cognizable

9   liberty interest in release on parole."  Pirtle, 611 F.3d at 1020 (quoting McQuillion, 306 F.3d at

10  902).  This liberty interest is enforceable under the federal Due Process Clause pursuant to

11  clearly established federal law.  Haggard v. Curry, 623 F.3d 1035, 1040-41 (9th Cir. 2010);

12  Cooke, 606 F.3d at 1213 (denial of parole to a California prisoner "in the absence of 'some

13  evidence' of current dangerousness . . . violat[es] . . . his federal right to due process."); Pearson,

14  606 F.3d at 609 (a state parole system that gives rise to a liberty interest in parole release is

15  enforceable under the federal Due Process Clause); Hayward, 603 F.3d at 563; see also Castelan

16  v. Campbell, No. 2:06-cv-01906-MMM, 2010 WL 3834838, at * 2 (E.D. Cal. Sept. 30, 2010)

17  (McKeown, J.) ("In other words, in requiring [federal] habeas courts to review parole denials for

18  compliance with California's 'some evidence' rule, Hayward holds that California state

19  constitutional law creates a cognizable interest in parole absent 'some evidence' of

20  dangerousness, and that the federal Due Process Clause in turn incorporates that right as a matter

21  of clearly established federal law.")

22                          b.  California's Statutes and Regulations on Parole

23          When a federal court assesses whether a state parole board's suitability

24  determination was supported by "some evidence" in a habeas case, that analysis "is shaped by the

25  state regulatory, statutory, and constitutional law that governs parole suitability determinations in

26  California."  Pirtle, 611 F.3d at 1020 (citing Hayward, 603 F.3d at 561-62).  The setting of a

parole date for a California state prisoner is conditioned on a finding of suitability.  Cal. Penal

Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  The state regulation that governs parole

suitability findings for life prisoners states as follows with regard to the statutory requirement of

California Penal Code § 3041(b):  "Regardless of the length of time served, a life prisoner shall

be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose

an unreasonable risk of danger to society if released from prison."  Cal. Code Regs. tit. 15, §

2281(a).  In California, the overriding concern in determining parole suitability is public safety.

In re Dannenberg, 34 Cal. 4th 1061, 1086 (2005).  This "core determination of 'public safety' . . .

involves an assessment of an inmates *current* dangerousness."  In re Lawrence, 44 Cal. 4th at

1205 (emphasis in original).  Accordingly,

> when a court reviews a decision of the Board or the Governor, the
> relevant inquiry is whether some evidence supports the decision of
> the Board or the Governor that the inmate constitutes a current
> threat to public safety, and not merely whether some evidence
> confirms the existence of certain factual findings.

Id. at 1212 (citing In re Rosenkrantz, 29 Cal. 4th at 658; In re Dannenberg, 34 Cal. 4th at 1071;

and In re Lee, 143 Cal. App.4th 1400, 1408 (2006)).  "In short, 'some evidence' of future

dangerousness is indeed a state *sine qua non* for denial of parole in California."  Pirtle, 611 F.3d

at 1021 (quoting Hayward, 603 F.3d at 562).  See also Cooke, 606 F.3d at 1214.[3]

Under California law, prisoners serving indeterminate prison sentences "may

serve up to life in prison, but they become eligible for parole consideration after serving

---

[3]  As the Ninth Circuit has explained, the "some evidence"

> requirement imposes substantive rather than purely procedural
> constraints on state officials' discretion to grant or deny parole: "a
> reviewing court . . . is not bound to affirm a parole decision merely
> because the Board or the Governor has adhered to all procedural
> safeguards."  In re Lawrence, 44 Cal.4th [at 1210].   Rather the
> court must ensure that the decision to deny parole is "supported by
> some evidence, not merely by a hunch or intuition."  Id. [at 1212].

Cooke, 606 F.3d at 1213-14.

1   minimum terms of confinement." In re Dannenberg, 34 Cal. 4th at 1078.  The Board normally

2   sets a parole release date one year prior to the inmate's minimum eligible parole release date, and

3   does so "in a manner that will provide uniform terms for offenses of similar gravity and

4   magnitude in respect to their threat to the public."  In re Lawrence, 44 Cal. 4th at 1202 (citing

5   Cal. Penal Code § 3041(a).  A release date must be set "unless [the Board] determines that the

6   gravity of the current convicted offense or offenses, or the timing and gravity of current or past

7   convicted offense or offenses, is such that consideration of the public safety requires a more

8   lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ."  Cal.

9   Penal Code § 3041(b).  In determining whether an inmate is suitable for parole, the Board must

10  consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present
> mental state; past criminal history, including involvement in other
> criminal misconduct which is reliably documented; the base and
> other commitment offenses, including behavior before, during and
> after the crime; past and present attitude toward the crime; any
> conditions of treatment or control, including the use of special
> conditions under which the prisoner may safely be released to the
> community; and any other information which bears on the
> prisoner's suitability for release.

16  Cal. Code Regs., tit. 15, § 2281(b).  However, "there must be more than the crime or its

17  circumstances alone to justify the Board's or the Governor's finding of current dangerousness."

18  Cooke, 606 F.3d at 1214.  See also Lawrence, 44 Cal. 4th at 1211 ("But the statutory and

19  regulatory mandate to normally grant parole to life prisoners who have committed murder means

20  that, particularly after these prisoners have served their suggested base terms, the underlying

21  circumstances of the commitment offense alone rarely will provide a valid basis for denying

22  parole when there is strong evidence of rehabilitation and no other evidence of current

23  dangerousness.")

24          The regulation identifies circumstances that tend to show suitability or

25  unsuitability for release.  Cal. Code Regs., tit. 15, § 2281(c) & (d).  The following circumstances

26  are identified as tending to show that a prisoner is suitable for release:  the prisoner has no

juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; the prisoner has experienced reasonably stable relationships with others; the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; the prisoner committed his crime as the result of significant stress in his life; the prisoner's criminal behavior resulted from having been victimized by battered women syndrome; the prisoner lacks a significant history of violent crime; the prisoner's present age reduces the probability of recidivism; the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release; institutional activities indicate an enhanced ability to function within the law upon release. Id., § 2281(d).

The following circumstances are identified as tending to indicate unsuitability for release:  the prisoner committed the offense in an especially heinous, atrocious, or cruel manner; the prisoner had a previous record of violence; the prisoner has an unstable social history; the prisoner's crime was a sadistic sexual offense; the prisoner had a lengthy history of severe mental problems related to the offense; the prisoner has engaged in serious misconduct in prison. Id., § 2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an especially heinous, atrocious, or cruel manner include:  multiple victims were attacked, injured, or killed in the same or separate incidents; the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; the victim was abused, defiled or mutilated during or after the offense; the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering; the motive for the crime is inexplicable or very trivial in relation to the offense. Id., § 2281(c)(1)(A) - (E).

In the end, under state law as clarified by the California Supreme Court,

the determination whether an inmate poses a current danger is not dependent upon whether his or her commitment offense is more or less egregious than other, similar crimes. (*Dannenberg, supra*, 34 Cal. 4th at pp 1083-84 [parallel citations omitted].) Nor is it dependent solely upon whether the circumstances of the offense

exhibit viciousness above the minimum elements required for conviction of that offense. Rather, the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense. This inquiry is, by necessity and by statutory mandate, an individualized one, and cannot be undertaken simply by examining the circumstances of the crime in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude. [citations omitted].

In re Lawrence, 44 Cal. 4th at 1221. See also In re Shaputis, 44 Cal. 4th at 154-55.

In this federal habeas action challenging the denial of release on parole it is the court's task to determine "whether the California judicial decision approving the [Board's] decision rejecting parole was an 'unreasonable application' of the California 'some evidence' requirement, or was 'based on an unreasonable determination of the facts in light of the evidence.'" Hayward, 603 F.3d at 563. See also Pearson, 606 F.3d at 609 ("Hayward specifically commands federal courts to examine the reasonableness of the state court's determination of facts in light of the evidence."); Cooke, 606 F.3d at 1213. Accordingly, below the court considers whether the Board's decision to deny parole in this case constituted an unreasonable application of the "some evidence" rule or was based on an unreasonable determination of the facts in light of the evidence of record.

　　　　　3. 2007 Board Decision

In addressing the factors it considered in reaching its 2007 decision that petitioner was unsuitable for parole, the Board in this case stated, in relevant part, as follows:

PRESIDING COMMISSIONER MARTINEZ: . . . The Panel reviewed all of the information received from the public and relied on the following circumstances in concluding that the prisoner is not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison.

We have come to this conclusion, first and foremost, by the commitment offense in noting that it was carried out in an especially cruel, a very callous manner. This offense was carried out in a very dispassionate, a very calculated, premeditated manner

11

and certainly for the purpose of monetary gain.  The motive of this was very trivial and that it was carried out for the purpose of a ransom and noting that the inmate kidnapped at gunpoint the victim, Zoraida Noriega.  The victim was taken to the Valley Inn Motel where the inmate then met up with his crime partners, a Raul Serrano and a Gabriel Ayala.  The information received from the victim was that they were armed with a weapon, noting that the co-defendant Serrano called the victim's family and demanded a $15,000 ransom.  During this time the family members did contact law enforcement.  They were able to put a trace on the call and trace it to the motel.  Upon law enforcement arriving at the motel they saw the inmate leave the motel room, drive off.  He was later arrested.  Also, the two crime partners left the motel room with the victim.  They used her as a hostage for their escape.  They were pursued by law enforcement, sheriff's deputies who did subsequently arrest them, noting that the victim was rescued unharmed.  Certainly this victim experienced a traumatic situation in reference to her being kidnapped at gunpoint and certainly an individual that was very vulnerable in regards to this crime.

These conclusions, as I've indicated here and laid out, are drawn from the statement of facts and these are taken from the probation officer's report and police reports.

We find that the inmate does not have a criminal record, no juvenile record or adult record.

Noting that in regards to his programming, we find that he had programmed in a limited manner while incarcerated.  And he has not sufficiently participated in beneficial self-help and therapy programs.

Looking at the file, it was determined that it's not even certain as to whether Mr. Laponte has even obtained a GED.  Again, there is no proof of that, of him ever receiving it, so there is an issue there.

In regards to his misconduct while incarcerated, he has obtained fifteen 128 counseling chronos.  The most recent was in December of 2006 for subject to rules which would involve removal of food items.  Concerning his serious 115 disciplinary reports, he has a total of 22.  He has received two serious 115 disciplinary reports since his last hearing in 2005, August of '06 refusing to double cell and in July of '06 for disobeying orders.  He has continued to display negative behavior while incarcerated and it certainly has, obviously, possibly limited his ability to demonstrate parole readiness.

Again, noting that he has not programmed at all in reference to obtaining any self-help.

/////

12

Again, he had been currently assigned as a barber, but at this point in time he is unassigned.  Again, due to Mr. Laponte not willing to participate in this hearing, certainly we were unable to question him concerning as to what the circumstances are at the present concerning his work assignments and things of that nature.  But there certainly are no records to indicate that he has been doing anything at all.

The psychological evaluation is somewhat conflicting to a degree.  The psychiatrist, a Dr. van Couvering indicated on the July 1st, 2005 evaluation that Mr. Laponte, in regards to insight, she writes that he did see his own role in the crime, judgment and anticipation of consequences were generally intact, however the assumptions that led to the crime might be a cause for concern.  Diminished impulse control may also have led to the crime.

Under diagnosis Axis II oppositional defiant disorder in adulthood and I think that's somewhat been carried on even at this present time based on Mr. Laponte's presentation here today when he was asked to come in and lay out his reasons as to why he wanted to fire his state appointed counsel.  Again, and he was given the opportunity to stay and remain and participate in his hearing, but he chose not to.  Certainly he has displayed some anger issues, uncooperative behavior, defiant as well.

Noting that the psychologist went on to indicate that under the estimated dangerousness in the community, significant risk factors in dealing with an oppositional individual such as this inmate, it is difficult not to react to his conflict with authority.  No one was injured in the crime, although the victim may well have been frightened.  Aside from his one physical altercation in prison, no one has been physically injured by him during his incarceration and he has no record of prior crimes.  While he might not be the most agreeable neighbor in the community he is more likely to be irritative than dangerous.

Based on the above, estimated future dangerousness in the community is low, and I do tend to disagree in regards to that particular statement.  I think that Mr. Laponte has some anger issues here that need to be explored and we are going to be requesting a new psychological evaluation to address these issues.  It does appear that even the doctor has a tendency to even minimize his involvement in this crime of kidnap and robbery.

So, noting that, we are going to be requesting a new psych to address more specific issues.  There does appear to be some deterioration in regards to his mental state.  Again, from reflections of the 2005 hearing where he also displayed behavior that was not appropriate during his hearing.

/////

13

In regards to his parole plans, again, he did not provide any. He does not have realistic parole plans and no viable residential or acceptable employment plans. He does appear to have some marketable skills. Again, there is some - - a barber, as well as a vocation of welding, but again, nothing was provided here today. In regards to his parole plans in the past, he has indicated that he did not want to provide any information to the Board concerning his parole plans.

The PC 3042 notices, again, there is opposition from the Los Angeles District Attorney's Office.

The Panel makes the following findings. That the prisoner certainly needs further self-help in order to face, discuss, understand and cope with stress in a nondestructive manner and, certainly, also, to further delve in the causative factors of the life crime. We feel that until progress is made in these areas, the prisoner certainly does continue to be unpredictable and a threat to others and is something that this particular Board here is not going to gamble on in regards to Mr. Laponte. Certainly with his behavior and his conduct, again, there certainly are some issues there that need to be addressed.

The prisoner, we find, has limited gains. Again, if anything, he has just basically taken steps backwards concerning his programming. We do feel that he must demonstrate an ability to maintain gains over an extended period of time and also in view of his continued negative behavior and lack of program participation there is no indication that this prisoner would behave differently if paroled out into the free community.

In regards to what we commend him for, it's very limited, again, being now disciplinary free since August of 2006, his vocation of welding and, again, he was assigned at some time as a barber, but is currently unassigned at this time. So we do commend him for those things he has been involved in.

However, these positive aspects of his behavior do not outweigh the factors of unsuitability . . .

(Pet., Part 1 (Doc. No. 1-1) at 69-75.)

    4. Discussion

        Thus, in finding petitioner's unsuitable for parole, the Board relied upon the

circumstances of the commitment offense, petitioner's limited programing while in prison, and

his continued institutional misconduct. The Board also found that petitioner's psychological

evaluation, to the extent it found that he posed a low threat of future dangerousness in the

14

1  community, to be unreliable in light of his issues with anger and also found that petitioner lacked

2  adequate parole plans.

3           With respect to the circumstances of his commitment offense, the Board found

4  that it was carried out in an especially cruel, callous, dispassionate, calculated manner, for a very

5  trivial reason.  As noted above, the factors to consider in deciding whether the prisoner's offense

6  was committed in an especially heinous, atrocious, or cruel manner include:  multiple victims

7  were attacked, injured, or killed in the same or separate incidents; the offense was carried out in a

8  dispassionate and calculated manner, such as an execution-style murder; the victim was abused,

9  defiled or mutilated during or after the offense; the offense was carried out in a manner that

10 demonstrated an exceptionally callous disregard for human suffering; the motive for the crime is

11 inexplicable or very trivial in relation to the offense.  Cal. Code Regs., tit. 15, § 2281(c)(1)(A) -

12 (E).  Certainly the record establishes that petitioner's motive in committing the kidnapping for

13 ransom, false imprisonment by violence, assault with a firearm and second degree robbery was

14 inexplicable or very trivial in relation to the seriousness of the offense.  In this regard, petitioner

15 and his partners in crime kidnapped a young lady and held her hostage while demanding a mere

16 $15,000 ransom from her family.  It is not clear from the record, however, that petitioner's

17 offense conduct also satisfied other factors that would support a finding that it was "especially

18 callous" or "very trivial."  Id.[4]

19           As noted in the discussion above, a California prisoner's commitment offense can

20 constitute "some evidence" to support the Board's unsuitability decision as long as it is still

21 relevant to a determination of the inmate's current dangerousness.  In re Lawrence, 44 Cal. 4th at

22 1221; In re Shaputis, 44 Cal. 4th at 154-55.  Specifically, "the circumstances of a commitment

23 offense cannot constitute evidentiary support for the denial of parole 'unless the record also

---

24

25   [4]  It must be noted that development of the record was hampered by petitioner himself
     who accused the Board of holding the hearing against his will, refused to allow his appointed

26   counsel to represent him, refused to participate and was thereafter removed from the hearing.
     (Pet., Part 1 (Doc. No. 1-1) at 51.)

establishes that something in the prisoner's pre-or post-incarceration history, or his or her current

demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness

that derive from his or her commission of the commitment offense remain probative to the

statutory determination of a continuing threat to public safety.'"  Cooke, 606 F.3d at 1216 (citing

Lawrence, 44 Cal.4th at 1214).  In this case, the Board did not rely on the commitment offense

alone in denying parole, but also cited petitioner's limited programing and his continued

institutional misconduct.  In particular, petitioner's post-incarceration history and his current

demeanor and mental state considered in conjunction with his commitment offense provided

some evidence of his current dangerousness.

With respect to petitioner's limited programming, the Board noted that, while

petitioner completed vocational welding training in 1994 and was a barber at one time, petitioner

had "not programmed at all in reference to obtaining any self-help" and had not been employed

since April 10, 2007.  (Pet., Part 1 (Doc. No. 1-1) at 64, 71-72.)  Petitioner apparently refused to

participate in any self-help courses despite the Board's recommendation at a 2005 parole

suitability hearing that he do so.  (Id. at 64.)

As to his post-incarceration institutional misconduct, the Board found that

petitioner had received two additional prison rule violation reports since his last parole suitability

determination hearing in 2005, and a total of twenty-two since his incarceration.[5]  (Id. at 65.)

Petitioner's misconduct while imprisoned included the possession of inmate manufactured

alcohol, the destruction of state property, the obstruction of a peace officer, and a physical

altercation.  (Id. at 66.)  The Board did note that only one of petitioner's numerous rule violation

reports involved violence while the others were "largely a result of oppositional behavior."[6]  (Id.)

_____

[5] A California Department of Corrections Form 115 "Rules Violation Report" documents misconduct "believed to be a violation of law or [that] is not minor in nature."  (Cal. Code Regs., tit. 15, § 3312(a)(3)).

[6] Petitioner had also accumulated fifteen counseling chronos (CDC Form 128) for more minor misconduct while imprisoned.

1    The Board also cited petitioner's most recent psychological evaluation, which the

2 Board found to be "somewhat conflicting to a degree." (Id. at 72.)  The Board acknowledged

3 that although the report noted that "the assumptions that led to the crime might be a cause for

4 concern" and that "diminished impulse control may also have led to the crime," it went on to

5 state that while "it is difficult not to react to his conflict with authority" petitioner "is more likely

6 to be irritative than dangerous." (Id. at 72-73.)  The Board observed, however, that petitioner

7 was unable to behave appropriately at the outset of his 2007 parole hearing, displaying "some

8 anger issues, uncooperative behavior" and being "defiant as well." (Id. at 72-73.)  Moreover, the

9 Board expressed their concern that petitioner's mental state may be deteriorating in light of his

10 inappropriate behavior at his 2005 parole suitability hearing.[7] (Id. at 74.)  Based on their own

11 observations of petitioner and his conduct, the Board concluded that the psychological report was

12 unreliable.

13    The Board also relied upon petitioner's lack of parole plans in finding him

14 unsuitable in 2007.  Specifically, the Board noted that petitioner "did not provide" the Board with

15 any parole plans but merely indicated that if granted parole he would reside "outside of

16 California." (Id. at 62, 74.)  The Board recounted that at his 2005 hearing petitioner "refused to

17 provide" any information regarding his parole plans and defiantly claimed that the Board "did not

18 have . . . any reason to know any of his . . . information concerning parole plans or . . . family

19 members." (Id. at 62.)

20    These factors involving petitioner's post-incarceration conduct including his

21 limited programming, continued involvement in institutional misconduct, unreliable

22 psychological evaluation and lack of adequate parole plans constituted "some evidence"

23 supporting the Board's 2007 finding that petitioner posed an unreasonable risk of danger to

24

25    [7]  Petitioner provided this court with a partial transcript of his 2005 parole hearing.  At
26 that hearing petitioner confirmed to the Board panel that he would still commit the crime in
question "a thousand times" if given the chance to do so.  (Pet., Part 1 (Doc. No. 1-1) at 40-41.)

1   society if released from prison.  For the reasons explained above, the Board's decision was based

2   on "some evidence" in the record with "indicia of reliability."  Jancsek, 833 F.2d at 1390.

3   Therefore, the decision of the Los Angeles County Superior Court that petitioner's right to due

4   process was not violated by the Board's 2007 decision denying him parole is not contrary to or an

5   unreasonable application of federal law.

6         B.  Equal Protection

7              Petitioner also claims that the Board improperly found him unsuitable for parole

8   in 2007 based on "criteria and guidelines created for persons convicted" of murder.  (Pet. (Doc.

9   No. 1) at 5.)  Specifically, petitioner argues that the Board continues to conduct his parole

10   hearings "under the criteria and guidelines" of  California Code Regulations, Title 15, § 2402,

11   which are the suitability regulations applicable to those convicted of murder.  (Id. at 10.)

12   Petitioner's argument is essentially that because he has served a minimum term comparable to

13   that of someone imprisoned for first degree murder, the Board has "effectively made petitioner

14   serve a sentence reserved for prisoners sentenced for first degree murder."  (Id.)  In support of his

15   argument petitioner has provided the court with copies of the Matrix of Base Terms applicable to

16   murder and kidnapping as set out in California Code Regulations, Title 15, §§ 2282(c), 2403.

17   (Id. at 16-20.)

18              To the extent that petitioner is arguing that the state court has erred in applying

19   state law, presumably by allowing the inapplicable state regulations to be relied upon in assessing

20   his suitability for parole, such a claim is not cognizable in this federal habeas corpus proceeding.

21   See Rivera v. Illinois, ___ U.S. ___, 129 S. Ct. 1446, 1454 (2009) ("[A] mere error of state law .

22   . . is not a denial of due process") (quoting Engle v. Isaac, 456 U.S. 107, 121, n. 21 (1982) and

23   Estelle v. McGuire, 502 U.S. 62, 67, 72-73 (1991)).  Even construed liberally as alleging an

24   equal protection violation, petitioner's claim in this regard lacks merit.  Under California law,

25   those convicted of kidnapping, such as petitioner, are subject to an indeterminate life sentence

26   with the possibility of parole.  See Cal. Penal Code § 209(b).  As discussed above, California law

also dictates that a Board panel meet with an inmate one year before their minimum eligible release date and "normally set a parole release date . . . .  The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates."  Cal. Penal Code § 3041(a).  That statute also provides that the panel "shall set a release date *unless* it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."  Cal. Penal Code § 3041(b) (emphasis added).  Thus, California law requires only the setting of a "base term for each life prisoner who is found suitable for parole."  Cal. Code Regs. tit. 15, § 2282(a).  The "base term" is "established by utilizing the appropriate matrix of base terms" provided in Title 15, § 2282 of the California Code of Regulations.  Id.

Here, the Board did not find petitioner suitable for release on parole, which is a prerequisite for setting a "base term" and calculating a parole date.  Cal. Code Regs. tit. 15, § 2282(a); see also Sass v. Cal. Bd. of Prison Terms, 461 F.3d 1123, 1132 (9th Cir. 2006) ("The matrix is intended to ensure sentencing uniformity among those who commit similar crimes . . . .  Such considerations are, of course, inapplicable in the case of prisoners deemed unsuitable for parole."), overruled in part on other grounds by Hayward, 603 F.3d 546; Irons v. Carey, 505 F.3d 846, 851 n.3 (9th Cir. 2007) ("A 'determination of an individual inmate's suitability for parole under section 3041, subdivision (b) [of the California Penal Code] must precede any effort to set a parole release date under the uniform-term principles of section 3041, subdivision (a).'") overruled in part on other grounds by Hayward, 603 F.3d 546; Dannenberg, 34 Cal.4th at 1079-80.  In other words, absent the Board's determination of parole suitability, no "base term" exists. Cal. Code Regs. tit. 15, § 2282(a).  Thus, petitioner remained subject to an indeterminate life

19

sentence.  See Dannenberg, 34 Cal.4th at 1078 ("[I]ndeterminate sentences may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement.").  The Board therefore was not required to set a base term or compare petitioner's term of confinement to that of others who committed similar crimes because petitioner was found unsuitable for parole.

Moreover, a petitioner raising an equal protection claim in the parole context must demonstrate that he was treated differently from other similarly situated prisoners and that the Board lacked a rational basis for its decision.  McGinnis v. Royster, 410 U.S. 263, 269-70 (1973); McQueary v. Blodgett, 924 F.2d 829, 835 (9th Cir. 1991).  Here, petitioner has failed to demonstrate that any other inmate who was similarly situated to him was granted a parole date. Petitioner has also failed to demonstrate that the Board violated his equal protection rights by applying a different suitability standard to him than that applied to others similarly situated

Accordingly, petitioner is not entitled to federal habeas relief on his claim that his right to equal protection under the law was violated by the Board's determination in 2007 that he was not suitable for parole.

C.  Violation of Plea Agreement

Petitioner claims that the Board's 2007 finding of unsuitability, and his resulting continued incarceration, is a violation of his plea agreement which provided that he would serve a minimum term of seven years.  (Pet. (Doc. No. 1) at 5.)

1.  State Court Opinion

The Los Angeles County Superior Court specifically rejected petitioner's claim that his plea agreement has been violated by his continued incarceration.  The court reasoned as follows:

> The petitioner agreed to a bargain that subjected him to a life sentence.  An indeterminate sentence is, in legal effect, a sentence for the maximum term unless the parole authority acts to fix a shorter term.  See *In re Dannenberg* (2005) 34 Cal.4th 1061, 1097-98: *In re Honesto* (2005) 130 Cal. App. 4th 81, 92-93.  The

> relevant statutes and regulations that govern parole clearly do not
> entitle a prisoner to release on parole, regardless of the amount of
> time served, unless the Petitioner is found suitable for parole. See
> *Honesto, supra,* 130 Cal. App. 4th at 92-93.

(Answer, Ex. 2 at 3-4.)

### 2. Applicable Legal Standard

Plea agreements are contractual in nature and are construed using the ordinary rules of contract interpretation. United States v. Transfiguracion, 442 F.3d 1222, 1228 (9th Cir. 2006); Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003); see also People v. Toscano, 124 Cal. App.4th 340, 344 (2004). Courts will enforce the literal terms of the plea agreement but must construe any ambiguities against the government. United States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). In construing a plea agreement, this court must determine what petitioner reasonably believed to be its terms at the time of the plea. Franco-Lopez, 312 F.3d at 989; United States v. Anderson, 970 F.2d 602, 607 (9th Cir. 1992), as amended, 990 F.2d 1163 (9th Cir. 1993).

### 3. Discussion

Here, petitioner has failed to demonstrate that the Board's decision finding him unsuitable for parole violated the terms of his plea agreement. Petitioner is unable to point to any evidence demonstrating a promise by the prosecutor that petitioner would be released or granted parole at any particular time or before the expiration of his life term. This court may not grant habeas relief based upon petitioner's unsupported belief that he would be released at a time certain. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.") The decision of the Los Angeles County Superior Court rejecting this claim is not contrary to or an unreasonable application of federal law as set forth above, nor is it based on an unreasonable determination of

1   the facts of this case.  See Sabados v. Sisto, No. Civ S -08-CV-1210 FCD CHS P, 2010 WL

2   3521933, at *13 (E.D. Cal. Sept. 8, 2010) ("While petitioner may have hoped or expected to be

3   released sooner, the maximum duration of his commitment was set at life long before he

4   appeared before the Board. The Board's decision to deny him a parole release date did not

5   enhance or otherwise alter his plea agreement or punishment.")  Accordingly, petitioner is not

6   entitled to federal habeas relief on this claim.

7                                                CONCLUSION

8                   For all the reasons set forth above, IT IS HEREBY RECOMMENDED that

9   petitioner's application for a writ of habeas corpus (Doc. No. 1) be denied.

10                  These findings and recommendations are submitted to the United States District

11  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-

12  one days after being served with these findings and recommendations, any party may file written

13  objections with the court and serve a copy on all parties.  Such a document should be captioned

14  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

15  shall be served and filed within seven days after service of the objections.  Failure to file

16  objections within the specified time may waive the right to appeal the District Court's order.

17  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

18  1991).

19                  In any objections he elects to file petitioner may address whether a certificate of

20  appealability should issue in the event he elects to file an appeal from the judgment in this case.

21  See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

22  certificate of appealability when it enters a final order adverse to the applicant); Hayward, 603

23  F.3d at 554 (en banc) (prisoners are required to obtain a certificate of appealability to review the

24  /////

25  /////

26  /////

1  denial of a habeas petition challenging an administrative decision such as the denial of parole by

2  the parole board).

3  DATED: December 10, 2010.

4

5

_____

6  DALE A. DROZD
   UNITED STATES MAGISTRATE JUDGE

7  DAD:6
   laponte570.hc

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26